Iglesias and Alvarez v. Pernod Ricard. Take your time. Hold on, Mr. Atkins. Good morning. Wayne Atkins for the appellants. Hold on. Sorry. Yes, Mr. Atkins. Good morning. This is a case arising under the Helms-Burton Act based on the Cuban government's confiscation of assets of a distillery and allegations that those are repackaged and sold as part of the Havana Club. My problem with this case is you're arguing a bunch of things on appeal you didn't argue in the district court. In the district court, you argued an alter ego theory. Now you're arguing an agency theory. In the district court, it was about a website. Now it's about airports. It seems to me virtually everything you want to argue today is forfeited. I don't believe that's correct, Your Honor. If anything, I believe I've narrowed the issues on appeal from what was argued below. I think they argued a lot below. I'd agree with that. I think the issues is what it looked like to me. But I don't know that there are new issues that weren't raised below. I think the idea of imputing the subsidiary's actions. Now you want to argue about Florida's long arm statute, but in the district court, you argued that Rule 4K2 permits jurisdiction. I think both were argued below in response to the motion to dismiss the second amended complaint. In fact, I think it rests primarily on this allegation that there's this Havana Club being sold in the Miami and Fort Lauderdale airports. That was alleged in the second amended complaint, supported by a declaration from one of the plaintiffs, and expressly ruled on by the district court. If the district court felt it was abandoned, she probably would have said that instead of ruling directly on it, and she kind of dismissed it. I think that the core allegation there of whether the jurisdiction based on that allegation, I think that was squarely presented to the court and expressly addressed by the court. I don't believe the central issue there was abandoned in any way. I believe I narrowed the issues from what was argued in the district court. Yes, we didn't argue the alter ego theory on appeal. I didn't think that was supported by the facts, but I think the agency, the arguments about that allegation in the airport, I think that was squarely addressed in kind of the core of the issue before the court. There's a conclusory assertion in our declaration that it's sold in the airports. There's a flat out denial of that by the defendant's officers, right? It's not clear to me that Alvarez's declaration on this point is based on any personal knowledge. Right. I don't believe it's conclusory because I don't know what more you can say about the transactions. How in the world do they know whether it's sold in the airport or not? I would expect that a corporate officer would know whether the corporation sells products in certain retail establishments or not. They categorically deny that they sell their product at the Miami airport. It's not as if we have a declaration here that, look, I visited the Miami airport on Yeah. We don't have anything like that. Well, that's an analysis of what an evidentiary hearing would be for on this issue as a motion. How do I derive any idea that the declarant has personal knowledge of what is being sold in the airport? An evidentiary hearing where that question's asked? I mean, she says it's being sold in the airport. That's all we've got. But haven't we said that when the defendant submits affidavits or other factual evidence that contradicts the plaintiff's jurisdictional allegations, the burden shifts back to the plaintiff to produce evidence supporting jurisdiction? Correct. That is the standard, but when the plaintiff does provide those contradicting affidavits, as they did here, then it becomes whether the plaintiff's alleged a prima facie case for personal jurisdiction. But again, just to go back to what Judge Pryor was asking about, also when I looked at the allegation, it didn't appear that it came from personal knowledge. Is there something that indicates that it came from personal knowledge? I mean, it's possible I might have missed something. I don't believe there's anything in the record that makes it clear other than what the affidavit says at this point. I can't say anything from the record that leads to more personal knowledge. Why isn't that a problem? Because if someone's saying this is happening, my assumption is she saw it happening or has some basis for saying that, didn't just make that up. Why wouldn't she just say that? I can't answer that question. All I've got is the affidavit. It doesn't say specifically how she knows that. I don't know that there's a requirement, unless that's issues raised in some fashion, to elaborate, but I don't believe it's conclusory in the sense that it's not like a legal element that's just being asserted blindly. It's saying this fact happened, but that's something that further questioning or cross-examination or discovery would presumably bear out, but I don't know that there's an affirmative obligation at that stage to completely explain personal knowledge unless the issue's raised. Let me ask you this. In response to the declaration that said, we don't sell this in the Miami airport, was there anything that your client did after that happened? With regard to that allegation in particular? Right. To say, well, we said that it was sold there or something like that. Did you do anything in response to that? In response to that was the declaration, because I think that came after the denial, the declaration from the plaintiffs, but beyond that, I think it was just those declarations and that argument that that's enough. I don't know that it was addressed by the district court in the fashion of this is just a conclusory allegation. When she analyzed it, said, well, if that were true, then corporations everywhere would be subject to personal jurisdiction here. That wasn't really the analysis done by the district court. Part of the problem for the district court was that what you said in response, what your client said in response was that Pernod Ricard maintains a website that allows Florida residents to order Havana Club Rum. You didn't make any reference to this issue now that you're raising on appeal, that there was this issue about the airport. No argument about the airport at all in response to that, that I can find. It was discussed in the declaration as for argument beyond whether the allegations of the second amended complaint stated it. That's true that there were the allegations, but I think you're right that there was no argument specifically tied to that allegation. It was alleged . . . Now you say, oh, well, we had this thing in the declaration. The district court should have seen that. We didn't make any argument about it. We're now arguing about it. Let's say we were to vacate and remand, we'll send this back. You're telling me that your client has personal knowledge that it has, in fact, been sold in the Miami airport, and you're ready to back that up under the potential threat of To be honest, I have no idea on that. I came in for the appeal. I wasn't the attorney who prepared that declaration. I wasn't the attorney who prepared that allegation. It just looks like gamesmanship to me. The argument is as slippery and as changing. It's a chameleon to me. Right. Yeah, so I can't speak to whether my client's personal knowledge. I came into the case for the appeal. I came in. I assumed the allegations of the complaint were true because there was a motion to dismiss case and I'm relying on the record presented. I don't believe it's gamesmanship in that that argument, that allegation is always there and it was clear, at least to the district court, that it was worth addressing. She didn't dismiss and say, no, this wasn't clearly raised. She kind of just analyzed it fairly quickly and just saying, no, relying on this allegation be a kind of a slippery slope to subjecting corporations everywhere to personal jurisdiction. So I don't think it's gamesmanship in that sense. I think it's just I've narrowed the arguments from what were raised below because there were a lot of arguments raised below and I tried to focus specifically on this issue and I believe it does justify that allegation, the application of specific jurisdiction for trafficking is so broad under the statute that we have to, at this point, assume it's true and to the extent there's conflicting affidavits, there's procedures for reconciling that that are a little more than just a ruling on the papers on a motion to dismiss. But unless there's other questions, I'd just ask that the court reverse the dismissal. Thank you. Thank you. Okay. You've saved three minutes for rebuttal. Ms. Solares? Good morning. May it please the Court, Irma Solares on behalf of Pernod Ricard, S.A. As the panel's questions correctly reflect, there was simply no evidentiary support in the district court . . . Does the declaration say at the beginning that the following statements are based on my personal knowledge? They do. The statement itself does not reflect any facts and the law is clear . . . If you assert that the rum is sold at the Miami Airport, wouldn't that be an assertion of fact? It's not supported by any personal knowledge. That's why I asked the first question. Doesn't it say at the beginning that I may, you know, something to the effect of, you know, have personal knowledge of the following facts or something like that? It does. Okay. And the declaration by and large goes on for pages and pages talking about the declarant's  Right. And in passing, concludes really states and Havana Club Rum is sold at the Miami Airport. But don't we have to accept that then . . . I mean, we have to . . . Why don't we have to accept that as true since the preface says the statements are made based on personal knowledge? The court can accept self-serving declarations as true, but the cases state that they cannot be based on conclusory statements, particularly where . . . Why is it conclusory if it says it's based on personal knowledge? Because she doesn't say what that personal knowledge is based upon as . . . Why would she have to do that, though? I mean, if I sign an affidavit that says that, you know, this, I don't know, a grocery store sells Diet Coke, can I just say that's based on personal knowledge? Do I have to give you the last time I was in a grocery store when I, you know, when I purchased? I mean, that seems like you're requiring a lot for an affidavit. No, I think it's requiring a little more to rebut. Remember, this declaration was not made in the first instance. It's rebutting Pernod's declaration, two declarations, the Broca's declaration and the Floro's declaration, both of which say Havana Club Rum is not sold in any duty-free stores at either the Miami or the Fort Lauderdale airports. And the Floro's declaration more specifically says, lays out the entire business of Pernod Ricard travel and what it does. To simply come back and rebut that with the same statement that's made in the complaint. They've done nothing beyond what is averted in the complaint, which is it sold that duty-free. All she did is take that statement and repeat it again. Let me ask you a question then. Are there any other allegations in the declaration that are clearly not made from personal knowledge? Even though the preface says, I make this based on personal knowledge? I don't believe so. Then why should we assume that this one is not made on personal knowledge? Because of the way that the declaration is structured, the entire declaration just talks about her personal experience following the Castro takeover, how she went from an upper middle class existence to having to live in- Because there's nothing surrounding that. None of the facts. I mean, you might argue that it suggests that it is from personal knowledge if everything else in there is clearly from personal knowledge. But there's nothing in the surrounding facts. If one looks at that paragraph. I think we're maybe conflating evidence with allegations or claims. No, I believe, and this is the Abramson case, it's the shifting burden of looking at these issues and determining whether the plaintiff has, once the burden has shifted to the plaintiff, whether the plaintiff can adequately refute. And simply restating an allegation without any indication that it's based on personal knowledge or any facts. She said it's based on personal knowledge. Well, but what did they do to gain that personal knowledge? We would have to disbelieve that it was, we would have to, I mean, how could we find that it wasn't based on personal knowledge without deciding that it was, you know, that she wasn't telling the truth when she said it was based on personal knowledge? Because she didn't say, I purchased a Havana Club rum at a duty-free store. That's not the only way to know that it's sold there though. How about we- She doesn't explain how that is derived. I don't know how much more productive this is going to be. But it seems to me that you also argued that this allegation about the sales of the duty-free store at that airport was effectively abandoned in the district court. And the argument that was being made in the district court was an alter ego theory versus now we have an agency theory. What the plaintiff said in response to the motion was all about the sales on the website. Tell me about that. Well, again, they don't aver any facts regarding sales on the website. What we have is a- Tell me about abandonment. I mean, did they effectively abandon this point about the airport? And were they making really a different legal argument that is an alter ego argument as opposed to now resurrecting a fact that they had effectively abandoned in the district court in support of a different legal theory which is an agency theory? Correct. They did abandon that theory. We addressed it because they addressed it in their appellate briefs but we do believe that they abandoned it. They didn't pursue it in the court below and now they're arguing website. As the panel has correctly identified, this has been a moving target. Now they've effectively abandoned the website allegation. Correct. It's been a moving target throughout. Let's say we thought that the affidavit posed a problem because it says at the beginning the following facts are based on personal knowledge. Okay? If we were to send it back, then I would guess what we would have is discovery on this jurisdictional fact because we have declarations that say we don't sell it at the airport. We have what you've termed, I think it could be called, fairly could be called conclusory but it says that it's based on personal knowledge that it's sold at the airport. The district court could, as a trier of fact, have an evidentiary hearing on that jurisdictional fact and make a finding of fact about whether in fact it's ever been sold at the airport, right? It could but I don't think it's necessary because again, for the reasons expressed, it's not sufficient . . . You don't fear that evidentiary hearing though, do you? Pardon me? You don't fear that evidentiary hearing though, do you? I do not but I would not want to have to go through that. Of course. So, we don't believe . . . Let's assume it is sold at the airport. What's your argument that there's no personal jurisdiction if it is sold at the airport? I think the difference here is the duty-free world is kind of a unique situation that we have even if, let's assume for the sake of argument and we don't concede that the product is sold in duty-free stores . . . In Miami? Anywhere in the United States. Anywhere in the United States. Anywhere in the United States. Whether duty-free or outside of duty-free, this product . . . Never sold in America. Is never sold in America. But to Judge Brasher's question, if it were sold in duty-free, I think that would raise an entirely different set of circumstances and different questions because duty-free products have to go through customs warehouses and I would argue they don't enter the traditional stream of commerce that you see for other products. Well, if the question is whether your client has purposefully availed itself of the privilege of doing business in the United States, those sales would satisfy that, wouldn't they? I don't believe so. I don't necessarily believe that's an accurate statement because of the entire duty-free paradigm. I don't think that purposeful availment can be satisfied if it's not entering the true stream of commerce. These are products, duty-free products, are products that pass through customs warehouses and are not sold directly by Perneau to the general public. I think that would be a different analysis for duty-free sales. Your point is that if you look at 4K2 and nationwide jurisdiction, that would be inconsistent with the Constitution to have personal jurisdiction over you? Correct. We still look at due process requirements under Rule 4K2. It doesn't do away with those and so you still have to entertain the same due process analysis of arises out of or relates to purposeful availment. One doesn't do away with the other. But even just going along this line a little bit further, I understand your argument that if it's going through the duty-free, it's kind of, I mean, it's like one of those zones, I guess, right? That's outside of the United States, technically, even though it's on United States soil. Right. But, I mean, it seems like it would still be purposefully availing yourselves of the trade ability in the United States, right? Because the only reason that it's not technically considered the United States is because of United States laws that authorize it and it's still being sold on United States soil. Why would that not be the case? Again, I think this is an issue that is far beyond the briefing in this case and I haven't gone down that.  Fair enough. U.S. customs, the entire paradigm that arises under . . . I understand. That's fair enough. I just, you know, as you know, we can affirm for any reason and as long as it's in the record. And so, sometimes it's worth exploring what the other legal issues are that arise in the case. Of course. Let me ask you this. Did the plaintiff rely on Rule 4K2 in the district court at all to get jurisdiction? He did. Raised it in the briefing. It was not alleged in the complaint, but it was raised in the briefing below for the first time and we addressed it and we responded to it. But . . . In fact, that was all the plaintiff argued, wasn't it? Was that rule? That's correct. Not the Florida long arm statute that it now relies on. Correct. There's been no mention whatsoever of any of the criteria under the Florida long arm statute. We don't . . . Until now. Correct. We don't even know which provisions of the Florida long arm statute plaintiffs are traveling under, other than what's alleged in the complaint, but nothing has been briefed to that effect. I submit that unless the panel has any further questions, we will rely upon our briefing. Okay. Thank you, Ms. Solares. Mr. Adkins, you saved three minutes. I think we covered most of the issues pretty well. The only one I do want to touch on is this duty free issue, because this was addressed in a footnote of the answer brief, where they tried to create this carve out for duty free areas. In the cases they cite, it's a district court case that basically says you don't have minimum contacts just because you're holding a parent company's goods in a duty free warehouse. That's a little different from our case. We were talking about an actual sale within the U.S., as opposed to just holding it in a warehouse. I don't think that duty free issue is really on point, but other than that, I think we really covered everything in the earlier arguments. Let me ask you a question about Flora's long arm statute versus Rule 4K2. Which one are you relying on at this point? I think it's really an argument in the alternative, because the district court really did analyze it. Which is the argument in the alternative? Which is your primary argument, and which is your secondary? I think it's the federal Rule 4K2 is the primary one, with the alternative being the long arm statute, since that was kind of how it was analyzed by the district court, but I think assuming that main allegation we rely on is true, can kind of fall within either, would work here. Okay. Under Florida's long arm statute, the way I read the long arm statute, and I may be wrong about this, but it allows jurisdiction for injury to persons or property within the state of Florida. Which is this? Your client lives in California, so her person hasn't been injured, and what property does she have in the state of Florida where there's been an injury? Actually under that provision, I don't believe there would be, because the injury I think occurred in Cuba. I mean there's some injury, I guess the kind of unjust enrichment, which is also kind of an injury that's targeted by the Helms-Burton Act, I guess that's occurring here, because there's a sale here, so there's an injury in that sense of that unjust enrichment from the confiscation. But under that provision, I would agree it gets a little tenuous at that point, but that is the injury that I think the Helms-Burton Act is targeted at. The Helms-Burton Act is confiscated at the injury, I'm sorry, is targeted at the injury of confiscation. It is, or trafficking actually is the term they direct that, and trafficking is not only the confiscation, but the profits from it and designed to chill anyone from profiting from the confiscation, so it's very broad in that sense. Anything else, Mr. Atkins? I do not. I would just ask that the court reverse. Thank you. Thank you. Right on time, we'll move to our last case, Norwegian Cruise Line Holdings versus State Surgeon General.